IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN K. HARRIS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4779 |
| | § | |
| JOHN POTTER, POSTMASTER | § | |
| GENERAL, UNITED STATES POSTAL | § | |
| SERVICE, | § | |
| Defendant. | § | |

**MEMORANDUM ORDER ON DEFENDANT'S MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

On April 20, 2005, the parties consented to proceed before a United States Magistrate Judge, under 28 U.S.C. § 636(c), for all further proceedings, including trial and entry of final judgment. (Docket Entry # 15). In this action, Plaintiff John K. Harris ("Plaintiff," "Harris") claims that his former employer, the United States Postal Service ("Defendant," "USPS"), discriminated against him on the basis of his race, and then retaliated against him when he complained about that treatment. He has made statutory claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, against John Potter in his capacity as Postmaster General of the United States Postal Service. (Plaintiff's Original Complaint ["Complaint"], Docket Entry # 1). In response to Plaintiff's claims, Defendant has filed a motion to dismiss, for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1). (Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction ["Motion"], Docket Entry # 9). Plaintiff responded to the motion, and Defendant was permitted to reply. (Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ["Response"], Docket Entry # 18; Reply Brief in Further Support of Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction ["Reply"], Docket Entry # 20). After considering the pleadings and the applicable law, it is **ORDERED** that Defendant's motion is **GRANTED**, in its entirety.

**Background**

It is undisputed that Harris, an African-American male, was employed by USPS until late 2002. (Motion at 1, Exhibit ["Ex."] B: Affidavit of John K. Harris in Support of Plaintiff's Response in Opposition to Motion to Dismiss ["Harris Aff."] at ¶ 5, Docket Entry # 18). In this lawsuit, he claims that while working at the North Houston Processing and Distribution Center, his supervisor falsely accused him of misconduct. He further claims that this false accusation was in retaliation for prior discrimination complaints he had filed with the United States Equal Employment Opportunity Commission ("EEOC"). Before this court, he alleges that USPS failed to properly investigate that accusation, and so, he was unjustly terminated as a result of it. Finally, he contends that, while he was employed, he was subjected to racial slurs and other insulting conduct, which created a racially hostile work environment. (*See generally* Complaint).

All of Plaintiff's claims stem, in some way, from the events of September 13, 2002. On that day, Plaintiff's supervisor, Calvin Dunbar ("Dunbar"), accused him of playing dominoes beyond his allotted fifteen minute break. (Complaint at 3, ¶ 4; Motion at 2). After Dunbar filed a report describing the alleged misconduct, USPS issued a notice to Plaintiff informing him that he would be fired within thirty days. That decision was apparently prompted by the fact that Harris had been suspended on three prior occasions for the same reason cited in Dunbar's report. (*See* Motion, Ex. C at 2; Reply, Attachment 1 to Trimm Declaration). Two weeks after Plaintiff received notice of his termination, a co-worker allegedly provided a statement in support of Harris, which contradicted Dunbar's accusation. (Complaint, Ex. B). Despite that conflicting information, Harris was fired. On this record, however, it is not clear when the termination was made final. Harris alleges that, "[o]n November 27, 2002, a letter was read to me, my badge was taken from me and I was immediately walked out of the building." (Harris Aff. at ¶ 5). On the other hand, Defendant has submitted as evidence a "Letter of Decision," which states that the termination was not final until December 6, 2002. (Reply, Attachment 1 to Trimm Declaration). A receipt documenting service of certified mail shows that Plaintiff apparently received that written decision on December 9, 2002. (Reply, Attachment 2 to Trimm

Declaration).

Regardless of when the decision was final, there is no dispute that Harris first challenged his termination through the grievance process mandated by his union's collective bargaining agreement.  In that proceeding, a binding arbitration, Plaintiff claimed that he had been fired in violation of his contract.  During the arbitration, Harris emphasized that USPS reportedly fired him because of the September 2002 incident, as well as the three previous suspensions for the same conduct.  He insisted that, because the earlier suspensions had taken place more than two years before the date on which he was fired, they could not be cited as a justification for his firing under the labor contract in place.  (Harris Aff. at ¶ 3; Motion, Ex. C).  On May 25, 2003, the arbitrator rejected that claim, and found "just cause" for Plaintiff's termination.  (*See* Motion, Ex. C).  The arbitrator found that, although it was true that more than two years had elapsed between Harris' first and his final conduct violations, each of them had been "kept alive," under the union rules, by interim disciplinary proceedings.  (*Id.* at 8).  Following the arbitrator's decision, Harris waited almost two months before contacting an EEO counselor.  On July 22, 2003, Harris complained to the counselor, for the first time, that he believed he had been fired in retaliation for his prior EEO activity.[1]  (Motion, Ex. A).  That meeting with the EEO counselor took place more than seven months after Harris' termination.

On September 22, 2003, after informal discussions failed to resolve Harris' concerns, he filed a written complaint of retaliation with the postal service EEO Office.[2]  (Motion, Ex. D).  The retaliation claim was dismissed, however, on November 28, 2003, because Harris had not contacted an EEO counselor within forty-five days of his termination, as required under the regulations governing federal employment.  (Motion, Ex. F at 2) (citing 29 C.F.R. § 1614.105).  Harris appealed that dismissal, and on September 17, 2004, the EEOC issued a "right to sue" letter, advising him that he could pursue the claim in federal court.  (Complaint, Ex. A).  Three months later, he filed this lawsuit, alleging retaliation, wrongful termination, and a hostile

---

[1] Harris discussed other concerns with the counselor as well, but they are not relevant to his claim.

[2] That complaint was amended on October 10, 2003, but the changes have no bearing on this lawsuit. (Motion, Ex.E).

work environment.  (*See generally* Complaint).

In its motion, USPS asks the court to dismiss all of the claims against it, arguing that Harris did not exhaust the administrative remedies available to him, and so, the court lacks subject matter jurisdiction to consider them.  (*See generally* Motion)**.**  Having reviewed the pleadings, the undisputed evidence, and the relevant law, the court agrees, and **GRANTS** Defendant's motion to dismiss.

**Standard of Review**

It is axiomatic that "[f]ederal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998); *see also Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).  In a Rule 12(b)(1) inquiry, the plaintiff bears the burden to show that the court has jurisdiction to entertain his action. *Santos v. Reno*, 228 F.3d 591, 594 (5th Cir. 2000); *Stockman*, 138 F.3d at 151.  If the plaintiff cannot meet this burden, and "it appears that subject matter jurisdiction is lacking," then the court is required to dismiss the case, without reaching the merits.  *Stockman*, 138 F.3d at 151; *see Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir. 1994).  To assess whether jurisdiction exists, the court may choose to look at any of the following:

> (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996); *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).  Any of those avenues may be used to resolve the jurisdictional question, so long as the basis for the court's determination is clear.  *Poindexter v. U.S.*, 777 F.2d 231, 236 (5th Cir. 1985); *Williamson*, 645 F.2d at 413-14.  If a finding is based on the complaint alone, a plaintiff has available those safeguards inherent to decisions made under Rule 12(b)(6).  *Williamson*, 645 F.2d at 412.  That is, the allegations in the complaint are considered to be true in weighing the motion.  *Id*.  In this case, the court has considered Harris' complaint and the undisputed facts in the record.  Any factual disputes critical to the jurisdictional inquiry have been

resolved in Plaintiff's favor.  *See Barrera-Montenegro*, 74 F.3d at 659; *Moran*, 27 F.3d at 172; *MDPhysicians*, 957 F.2d at 181; *Voluntary Purchasing Groups*, 889 F.2d at 1384; *Williamson*, 645 F.2d at 413.  Based on the undisputed evidence presented, however, it is clear that no subject matter jurisdiction exists, and so, Harris' claims must be dismissed.

**Discussion**

Defendant argues that subject matter jurisdiction is lacking here on Harris's claims for retaliation, hostile work environment, and wrongful termination because he failed to exhaust the administrative remedies available to him before filing suit.  (Motion at 6).  In support of that contention, USPS underscores that, as a prerequisite to any Title VII litigation, Harris, as a federal employee, is required to contact an EEO counselor within forty-five days of an allegedly unlawful job action.  (*Id.* at 7) (citing 29 C.F.R. § 1614.105).  Defendant alleges that Harris clearly did not do so in this instance.  From the evidence presented, the court agrees.  Granting Harris every favorable inference from the evidence, the court assumes, for these purposes, that he became aware of his termination on December 9, 2002. Yet it was not until July 22, 2003, almost six months later, that he made his first complaint of retaliation.  (Motion at 7).  And, USPS also points out that Plaintiff never made a complaint of "wrongful termination" or a "hostile work environment" to an EEO counselor, as required.  (*Id*. at 8).

Harris apparently concedes that he did not make timely contact with an EEO counselor.  He argues, however, that equitable considerations relieve him of that obligation in this instance.  (Response at 2, ¶ 2) (citing 29 C.F.R. § 1614.105(a)(2)).  Plaintiff claims that he was not given proper notice of Dunbar's accusation against him, or his termination, nor was he aware of the forty-five day window to make contact with an EEO counselor.  (Harris Aff. at ¶¶ 2, 4-6).  Further, it appears that he makes an alternative claim that he delayed contacting an EEO counselor because his union representative informed him that he could not file a discrimination complaint until after the arbitrator had ruled on his grievance.  (*Id.* at ¶ 3).  Finally, Plaintiff argues that the exhaustion requirement in the Title VII law exists to provide "the agency the information that

it needs to investigate and resolve the dispute between the employee and the employer." *Munoz v. Aldridge*, 894 F.2d 1489, 1493 (5th Cir. 1990). He is adamant that, in this instance, the agency has all of the information necessary to resolve his claims, and so, his failure to exhaust the administrative procedures should not preclude his lawsuit. (Response at 4, ¶ 9).

In response to these equitable arguments, Defendant relies on the following undisputed evidence: Posters detailing the EEO administrative procedures are conspicuous throughout Harris' workplace; the termination notice he received set out the deadline for initiating contact with an EEO counselor; and Harris had made timely EEO complaints on seven prior occasions before he was fired.[3] (Reply at 2-6). Finally, although Defendant apparently acknowledges that Harris' union representative may have misled him about the appropriate filing deadlines, it argues that it was unreasonable for him to rely on that information as it was contrary to the written termination notice, which advised him of his rights. (*Id.* at 8). That letter made it clear that Plaintiff could file a grievance within the fourteen days following notice of the proposed termination, and he was informed about other remedies he could pursue as well. There is no question that the letter cited an incorrect twenty-one day deadline, rather than the actual forty-five day deadline, in which to file an EEO complaint. However, Harris was also informed that he could file an appeal with the Merit Systems Protection Board ("MSPB") within thirty days, in lieu of an EEO action, but that he could not do both. (*Id.*; Reply, Attachment 1 to Trimm Declaration at 3). Even though the letter undeniably gave bad information about the deadline for an EEO action, it never suggested that Plaintiff had to, or even could, wait until his grievance proceedings were final to file his EEO complaint. (Reply at 8). On its final point, USPS argues that, while equitable tolling might be appropriate if Harris had been misled by any action that it took, here, the purportedly bad advice on which Plaintiff relied was given by a third party. (*Id.*).

The argument which USPS makes for a Rule 12(b)(1) dismissal is quite familiar to the courts of this

---

[3]On this point, it must be noted that the deadline to contact an EEO counselor that was stated in the "Letter of Decision" was incorrect. But Defendant argues that, because the letter erroneously warned Harris of a more stringent time limit than the actual deadline, he was not harmed by the misinformation and was certainly on notice that he had only a limited period in which to file a complaint. (Reply at 6, n.1).

circuit.  It is well settled that "[a]s a precondition to filing suit in federal court, Title VII specifically requires a federal employee claiming discrimination to exhaust his administrative remedies." *Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998).  In addition, the Code of Federal Regulations, which governs federal employment, is explicit in its requirement that federal employees "who believe they have been discriminated against on the basis of race . . . must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter," and that they must do so within forty-five days of the allegedly discriminatory conduct.  29 C.F.R. § 1614.105(a).  An employee's failure to make contact within the time allotted is a bar to his claim.  29 C.F.R. § 1614.107(a)(2) ("[p]rior to a request for a hearing in a case, the agency shall dismiss an entire complaint . . . [t]hat fails to comply with the applicable time limits contained in §§ 1614.105 . . ."); *see also Teemac v. Henderson*, 298 F.3d 452, 454 (5th Cir. 2002); *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992).  Further, if a federal agency dismisses a claim for failure to comply with § 1614.105, the court must review that finding *de novo*.  *Teemac*, 298 F.3d at 455. There are, however, some exceptions to this rule, the most relevant of which is set out below:

> [t]he agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission."

29 C.F.R. § 1614.105(a)(2).  The Fifth Circuit has held, repeatedly, that "[t]he employee must establish waiver, estoppel, or equitable tolling to circumvent" the deadline.  *Teemac*, 298 F.3d at 454; *Pacheco*, 966 F.2d at 905.

On this record, the court agrees with USPS that Harris failed to comply with the applicable administrative deadlines.  At the outset, Defendant is correct in observing that no evidence shows  that Plaintiff ever complained to an EEO counselor about wrongful termination or a hostile work environment, let alone that he did so within the forty-five days allotted in § 1614.105(a).  (*See* Motion at 7-8).  On those

7

claims, Harris made no effort to invoke his available administrative remedies and they must be dismissed. On his remaining claim, the evidence is uncontroverted that Harris was fired, at the very latest, in December 2002, but he did not contact the EEO about that allegedly retaliatory action until July 2003, well beyond the forty-five day deadline to do so. With that finding, it follows that Harris failed to satisfy the administrative requirements on his retaliation claim, or any other claim that arises out of Title VII. (*See id.*). Whether Harris is entitled to an equitable tolling of the forty-five day deadline, which would alleviate the brunt of that administrative failure on his claim for retaliation, requires more scrutiny.

From the pleadings and evidence presented, it is not clear whether Plaintiff ever asked the EEO office to extend the forty-five day time limit. In an abundance of caution, the court will assume, without so deciding, that he made a proper request for that extension under 29 C.F.R. § 1614.105(a)(2). And, the court will also interpret Harris' contention here as a request for "traditional equitable tolling." *Teemac*, 298 F.3d at 457. But it is well settled that such requests are granted only in "rare and exceptional circumstances," and that "[t]he party who invokes equitable tolling bears the burden of proof." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *Wilson v. Secretary, Dept. of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995); *and see Teemac*, 298 F.3d at 457. Typically, equitable tolling is allowed only on a showing that "the plaintiff [was] actively misled by the defendant about the cause of action or [was] prevented in some extraordinary way from asserting his rights." *Teemac*, 298 F.3d at 457 (quoting *United States v. Patterson,* 211 F.3d 927, 930 (5th Cir.2000)). In even rarer circumstances, tolling may be appropriate if an employee can show that his "lack of sophistication" made it impossible for him to appreciate Title VII's procedural requirements. *See Teemac*, 298 F.3d at 457; *Rowe v. Sullivan,* 967 F.2d 186, 192 (5th Cir. 1992).

Harris' request for equitable relief hinges on his claim that he was prevented from contacting the EEO counselor, in a timely manner, by a number of "circumstances beyond his control." (Response at 3, ¶ 5). None of his arguments, however, persuades the court that the regulatory deadlines should be extended for equitable reasons. First, even assuming that USPS delayed in notifying Harris about the accusation against

him, or about the fact that he had been fired, he undoubtedly had notice of those events on December 9, 2002, when he received the certified letter informing him of his termination.  It is beyond dispute that he still did not complain to a counselor about those matters within the following forty-five days.  Plaintiff's next contention, that he was unaware of the administrative deadline for EEO complaints, is likewise unavailing. USPS has submitted uncontroverted evidence that information on that forty-five day time limit is posted throughout Plaintiff's workplace.  (Reply, Ex.1: Lee Declaration, Ex. 2: Wallace Declaration).  In this circuit, "[p]roviding adequate notification [of administrative requirements] to employees generally is sufficient; the employer need not prove that an individual employee understood the notice."  *Teemac*, 298 F.3d at 456. Indeed, the Fifth Circuit has made clear that informational posters in the workplace are a satisfactory method to provide "adequate notification" of EEO deadlines.  *Id.* at n.9 (*citing with approval Clark v. Runyon,* 116 F.3d 275, 277-78 (7th Cir. 1997) (holding that USPS's prominent posters announcing the informal counseling requirement established notification, even if employee was unaware of the requirement)).  Moreover, Harris was notified of the administrative requirements in the Letter of Decision that he received on December 9, 2002.  This evidence, when considered along with his seven timely EEO complaints prior to this incident, persuades the court that Plaintiff is not entitled to an equitable extension of the deadline because he was "unaware" of it.  (Reply, Attachment 1 to Trimm Declaration).

Plaintiff's final argument in favor of equitable relief is the claim that he was misinformed about his rights and obligations by his union representative.  Even were the court to accept this contention as true, Harris' complaint still can not be deemed timely.  Harris claims that his representative advised him that he could not contact an EEO counselor until the grievance process had been completed.  Even if that claim is credited, the evidence is clear that Harris did not make the required contact with a counselor until fifty-seven days, almost two months, after the arbitrator issued a ruling on his grievance.  (*See* Motion, Exs. A,C). Further, and more importantly, the Fifth Circuit has held that equitable tolling may be appropriate if  a defendant has misled a claimant about the administrative prerequisites to a claim, but not if it is a third party

who has done so.  *Teemac*, 298 F.3d at 457.  The court concludes that, in this instance, it is not appropriate to excuse Harris' failure to meet the administrative deadlines based on erroneous advice allegedly given by a non-party over whom the USPS had no control.

As a final matter, the court disagrees with Harris' assertion that the purpose of the administrative proceeding has been fulfilled, and so that requirement should be waived.  The United States Supreme Court has made clear that "[e]xhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."  *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).  In this case, granting Harris relief from his obligation to exhaust his administrative remedies "could weaken an agency's effectiveness by encouraging disregard of its procedures," and undermine the agency's authority.  *Id.*  More importantly, it also undermines the goal of judicial efficiency, because it eliminates the opportunity and incentive to resolve  disputes at the administrative level.  As a final, and equally important matter, it eliminates the agency's "opportunity to correct its own errors."  *Id.*  For these reasons, the court rejects Plaintiff's argument that his claim should be exempt from the administrative requirements simply because USPS has had an opportunity to gather relevant information on his claims.

From the evidence presented, the court concludes that Plaintiff failed to exhaust the administrative remedies available, which precludes his right to pursue these Title VII claims.  The Fifth Circuit has made it clear that

> [a]s a precondition to filing suit in federal court, Title VII specifically requires a federal employee claiming discrimination to exhaust his administrative remedies.  The complainant also must file his complaint in a timely manner.  If the claimant fails to comply with either of these requirements then the court is deprived of jurisdiction over the case.

*Randel*, 157 F.3d at 395 (internal citations omitted).  Because Plaintiff has clearly failed to exhaust his administrative remedies, and there is nothing in the record to justify equitable relief from that failure, the court has no jurisdiction to entertain these claims.  Defendant's motion to dismiss this suit for lack of subject matter jurisdiction is **GRANTED**.

**Conclusion**

Based on the foregoing, it is **ORDERED** that Defendant's motion to dismiss is **GRANTED**.

The Clerk of the Court shall enter this order and provide a true copy to all counsel of record.

**SIGNED** at Houston, Texas, this  9th day of September, 2005.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**